IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH G. ELLIS,

            Plaintiff,                  No. CIV S-07-2301 JAM KJM P

      vs.

ARNOLD SCHWARZENEGGER, et al.,

            Defendants.            FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with an action under 42 U.S.C. § 1983. He seeks damages and injunctive relief, alleging that defendants ordered the placement of additional beds at California State Prison-Centinela (CSP-Centinela) and that the resulting overcrowded conditions "increased the already existing threat to my life and well being." Second Am. Compl. at 4 (Docket No. 12). Defendants have filed a motion to dismiss.

I.      <u>Plaintiff's Allegations And Defendants' Grounds For Dismissal</u>

        Plaintiff alleges that both defendants – the Governor of California and the Director of the California Department of Corrections and Rehabilitation (CDCR) – are "responsible and accountable for... the overcrowding of [California's] prisons system." <u>Id.</u> The overcrowding, according to the complaint, "specifically affects me on B-Facility at Centinela Prison." <u>Id.</u> Plaintiff avers that defendants, acting in their "professional and/or political

1

positions," ordered the introduction of additional beds[1] into an already overcrowded facility, which in turn "hinders my mental, physical, and emotional well being, and does put my life at great risk, greater than previously." Id. at 4, 11. He alleges that the overcrowding has increased the danger of violence by other inmates; reduced or interrupted medical care; hindered the provision of dietary needs; limited the space for physical activity; and caused an increase in "stress, tension, frustration [and] aggravation." Id. at 4-5, 12. He seeks compensatory and punitive damages and injunctive relief in the form of "immediate release" from prison. Id. at 3.

Defendants seek dismissal on several alternative grounds, arguing that venue in this district is inappropriate, and that plaintiff has failed to exhaust administrative remedies. Defendants also argue that plaintiff has failed to state a claim on which relief can be granted, and the court lacks jurisdiction to grant any injunctive relief.

II.     Venue

Defendants object that venue is improper because CSP-Centinela is in Imperial County, which is in the geographical jurisdiction of the Southern District of California. Under the federal venue statute, however, venue is proper in a judicial district where any defendant may be found, if all defendants reside in the same state. 28 U.S.C. § 1391(b)(1). Both defendants have been sued in their capacities as executives in the state government of California; the offending act, according to plaintiff, was an order for the placement of additional beds at CSP-Centinela, which in turn created unconstitutional conditions of confinement. Taking plaintiff's allegation as true, such an order could only reasonably have emanated from the defendants' executive offices in Sacramento, which is in the Eastern District of California. Therefore venue is proper.

///

///

_____

[1] Plaintiff frequently refers to the additional bunks as "E-beds," an abbreviation for "Emergency beds." See Opp'n, Ex. B at 24 (docket no. 36).

III.    Exhaustion

Defendants argue that plaintiff has failed to exhaust his administrative remedies. A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act (PLRA), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). CDCR regulations provide administrative procedures at one informal and three formal levels of review to address an inmate's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Generally, a prisoner exhausts his administrative remedies when he receives a "Director's Level Decision," or third formal level of review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U. S. 810 (2003).

In support of their exhaustion argument, defendants present the affidavit of D. Degeus, the Appeals Coordinator at CSP-Centinela. See Decl. of D. Degeus (docket no. 26-3). Degeus states that he checked the appropriate records at Centinela and found that plaintiff did not file an inmate grievance with respect to an increase of the prisoner population at Centinela. Id. ¶ 6. Defendants also present the affidavit of N. Grannis, Chief of the Inmate Appeals Branch (IAB) of the CDCR. See Decl. of N. Grannis (docket no. 26-4). Grannis avers that prior to the filing of this lawsuit, plaintiff submitted no third-level appeal concerning inmate overcrowding at Centinela. Id. ¶¶ 9-13.

1      With his opposition, plaintiff submits documents showing that in 2009 he tried to

2   file a grievance about the placement of the E-beds at CSP-Centinela.  See Opp'n (docket no. 36),

3   Ex. B.  A letter from the appeals coordinator at Centinela informed plaintiff that he did not file

4   his appeal within the time constraints required under "CCR 3084.6(c)."  Id. at 23.[2]  Under CDCR

5   regulations, an inmate must file his prisoner grievance within fifteen days of the events grieved.

6   Cal. Admin. Code tit. 15, § 3084.6(c).  The E-beds arrived in 2007, so any grievance directly

7   challenging the introduction of the E-beds in 2009 would be untimely.  Failure to exhaust

8   available administrative remedies by filing a late grievance generally requires dismissal.

9   Woodford v. Ngo, 548 U.S. 81 (2006).

10      Given the nature of plaintiff's claim – i.e., that the E-beds created an ongoing

11   overcrowded condition – it is arguable that plaintiff still had a timely complaint in April 2009,

12   when he first filed a grievance concerning the overcrowded conditions.  However, a prisoner

13   must complete all available administrative steps before he files a civil rights action; exhaustion

14   during the pendency of the litigation will not save an action from dismissal.  See McKinney v.

15   Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  This lawsuit was filed on October 26, 2007.  It

16   appears, then, that plaintiff came to this court seeking relief from overcrowded conditions well

17   before he sought relief within the CDCR's established procedures.  Therefore, this case should be

18   dismissed unless plaintiff demonstrates the appeals process was somehow unavailable to him.

19   See Marella v. Terhune, 568 F.3d 1024 (9th Cir. 2009).

20      Plaintiff argues he is excused from fully exhausting his claims here because "there

21   is no administrative process available to address the issue of overcrowding."  Opp'n at 3.  The

22   term "available" stems directly from the PLRA, which bars an action "until such administrative

23   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As long as a prison's

24   administrative tribunal has the authority to take some kind of action in response to the inmate's

25

26          [2]  Page references are to those assigned by the court's CM/ECF system.

4

complaint, administrative review is "available" and exhaustion under the PLRA is required. Booth v. Churner, 532 U.S. 731 (2001). However, "[t]he obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies... available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005). As proof of the unavailability of remedies here, plaintiff submits a statement written by an appeals coordinator at Centinela in response to another inmate's grievance. That inmate complained about medical care he had received and partially blamed the inadequate treatment on overcrowding at Centinela. See Opp'n, Ex. A at 16. The prison partially granted the inmate's appeal of his medical treatment, but the appeals coordinator also explained that "[i]t is beyond the scope of the appeals process to address the population census of the institution." Id. at 20. Here, plaintiff did not receive that explanation as the prison's reason for denying his grievance. Rather, it was rejected on the sole basis of untimeliness. Still, he alleges that if there were no administrative channels available for him to pursue a complaint about overcrowding in the first place, then any failure to exhaust should be excused.

Defendants argue that because the appeals coordinator's statement about the "scope of the appeals process" was made in response to an appeal filed by another inmate and after this case was initiated, the court should disregard the statement altogether. See Reply at 2-3 (docket no. 37). The fact that the appeals coordinator's statement was addressed to another inmate does not, by itself, disqualify the statement as relevant to the issue of "availability" here. To the contrary, the Ninth Circuit has articulated a broad range of acceptable evidence in determining what remedies are "available," including "documentary or testimonial evidence from prison officials who administer the review process...." Brown, 422 F.3d at 937. Although such evidence ordinarily comes from a defendant who argues failure to exhaust, it could be valid if plaintiff were submitting it as an admission from an official. Considering the statement does not change the result, as explained below.

The Ninth Circuit said in Brown that "a prisoner need not press on to exhaust further levels of review once he has ... been reliably informed by an administrator that no remedies are available." Brown, 422 F.3d at 935. As another judge of this court has concluded, interpreting Brown, "relief is not 'available' if its existence is not reasonably apparent to the prisoner." Jones v. Burk, 2010 WL 475321 at *5 (E.D.Cal.). In this case, plaintiff's attempts to access the appeals process do not suggest he could reasonably have thought the grievance process was unavailable to hear his claim of overcrowding. He states he "re-filed an Inmate Appeal in an attempt to amend [the] 'deficiency' attached to his civil claim," Opp'n at 4, approximately three months after the other inmate was informed that his own overcrowding complaint was "beyond the scope of the appeals process."[3] In other words, the appeals coordinator's statement to the other inmate did not deter plaintiff from attempting to use the appeals process. Furthermore, roughly a year-and-a-half passed between the introduction of the E-beds and the appeals coordinator's response to plaintiff's fellow inmate. Plaintiff does not claim that during that time, while the allegedly onerous effects of overcrowding persisted, a prison official told him a complaint of overcrowding was beyond the scope of the prison appeals process.

In Booth, the Supreme Court stressed that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth, 532 U.S. at 741 n.6. Booth presents a fine but dispositive distinction for plaintiff's argument. Plaintiff is not arguing that he could not avail himself of the grievance process; he is arguing that it was futile even to try. Booth makes it clear that such an argument does not constitute an excuse from the exhaustion requirement. At the very least, it was mandatory for

---

[3] Plaintiff uses the word "re-filed" because he claims to have pursued an appeal before his 2009 attempt. In his appeals documents, he explained to his appeals coordinator that "I had at a previous date (2007) tried to appeal the problem." Opp'n, Ex. B at 26. According to plaintiff, "[t]here was no response, no return of documents, etc. This is a constant problem at this institution." Id. In the body of his opposition to the motion to dismiss, he repeats the claim, stating that he "attempt[ed] to introduce an inmate appeal (Form 602) at the informal level, prior to filing [the] 1st Amended Complaint." Opp'n at 3. Plaintiff "admits his inability to substantiate this attempt." Id. at 3-4.

1 plaintiff to initiate the grievance process, regardless of the outcome, before he initiated this

2 lawsuit. "[O]ne 'exhausts' processes, not forms of relief, and the statute provides that one must."

3 Id. at 739. Had he received a denial based on the scope of the appeals process, he would then

4 and only then have an argument that he was not required to "press on to exhaust further levels of

5 review." Brown, 422 F.3d at 935.

6         Because plaintiff did not timely or fully exhaust the prison grievance process, the

7 motion to dismiss for failure to exhaust should be granted, and the court need not reach

8 defendant's other arguments.[4]

9   IV.   <u>Conclusion</u>

10         In accordance with the above, IT IS HEREBY RECOMMENDED that

11 defendants' motion to dismiss (docket no. 26) be granted without prejudice for failure to exhaust

12 administrative remedies and this case be closed.

13         These findings and recommendations are submitted to the United States District

14 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-

15 one days after being served with these findings and recommendations, any party may file written

16 objections with the court and serve a copy on all parties. Such a document should be captioned

17 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

18 /////

19 /////

20 /////

21

22     [4] Even if the court considered the question of injunctive relief, it appears plaintiff was
moved from CSP-Centinela in late July or early August 2009. See Notice of Change of Address
23 (docket no. 31). Generally, when a prisoner complains of unconstitutional conditions of
confinement at one facility and is transferred to another facility, a claim for injunctive relief from
24 those conditions becomes moot. See, e.g., Brady v. Smith, 656 F.2d 466, 468 (9th Cir. 1981).
While plaintiff may avoid a finding of mootness if he can demonstrate a reasonable expectation
25 of returning to a facility where the allegedly unconstitutional conditions persist, Darring v.
Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986), plaintiff does not contend there is any likelihood
26 of injury recurring. The claim for injunctive relief would therefore be moot.

shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 26, 2010.

_____
U.S. MAGISTRATE JUDGE